IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAMES LEE MCCLAIN                                                                    PLAINTIFF

      v.          Civil No. 5:15-cv-05081-TLB-MEF

SERGEANT MISTY BEHNIA;
CORPORAL TIM CAUDLE;
DEPUTY TANNER WEEKS;
DEPUTY SETH PARTAIN;
CORPORAL T. MULVANEY;
and DEPUTY G. CERVANTES                                                       DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights case filed by the Plaintiff, James Lee McClain, pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the Grimes Unit of the Arkansas Department of Correction (ADC). The events that are the subject of this case occurred in March, 2015, when Plaintiff was incarcerated in the Washington County Detention Center (WCDC). He maintains his constitutional rights were violated in the following ways: (1) a false disciplinary citation was issued against him; (2) he was denied Due Process; (3) he was wrongfully referred to the prosecutor to see if criminal charges should issue; and, (4) his belongings were unlawfully searched.

Defendants filed a Motion for Summary Judgment (Doc. 23) on September 18, 2015. On April 14, 2016, a hearing was held to allow the Plaintiff to testify in response to the Motion. Plaintiff appeared by video conference. At the conclusion of the hearing, the Motion was taken under advisement pending preparation of this report and recommendation.

## I. BACKGROUND

Plaintiff was booked into the WCDC on January 31, 2015. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) A-1 at 1.[1] Plaintiff was being held on pending criminal charges. *Id.* at 6.

On March 23, 2015, Plaintiff's second medical mat was taken. *Defts' Ex.* A-1 at 27. Plaintiff maintained there were plenty of extra mats. *Id.* He stated he would be looking into filing a lawsuit. *Id.* Deputy Misty Charles responded saying they did not have enough mats at that time and as soon as more mats were available his second mat would be returned to him. *Id.*

On March 24, 2015, Deputy Weeks reported a shank had been found. *Defts' Ex.* A-1 at 15. His report provides as follows:

> On 03/24/2015 at approximately 12:34 P.M., I was in B-pod Control when deputy S. Partain handed me a note that he found while conducting a pat down on a Detainee before taking him and 12 other Detainees out to the yard. The note stated "MCCLAIN HAS A SHANK! We had an altercation and he pulled it out. It's black w/ a white Handle. Told me he was gonna KILL ME! A nail cliper blade connected to a handle. For your safety and mine, im informing you."
>
> At 12:40 P.M., Deputy G. Cervantes #565, Partain and I then took the rest of A-block out to the yard and searched Detainee McClain, James (Age 40) bunk. With a handheld metal detector I scanned Detainee McClain's mat and the metal detector alarmed. Starting at a preexisting hole in McClain's mat Deputy Partain and I opened the mat up further to find a shank made out of a comb and saran wrap. The shank and note were then given to Corporal T. Mulvaney #455 to be placed into evidence. Detainee McClain is in rule violation 09-2 Possession/introduction of any gun, firearm, weapon, ammunition, knife, sharpened instrument, or unauthorized tool.

---

[1] Page citations to this exhibit are to the Jail File Page number found in the bottom center of the page.

*Id. See also Defts' Ex.* A-1 at 19 (Deputy Weeks' supplemental report). There is a video showing the search. *Defts' Ex.* A-3 (time stamp 5:07 to 10:43). Pictures were taken of the shank. *Defts' Ex.* A-1 at 22-25.

Deputy Partain also submitted an incident report. *Defts' Ex.* A-1 at 16. His report describes finding the note, giving it to Deputy Weeks, and the search of McClain's mat. *Id.* It then continues:

> The shank appeared to be made from a sharpened down comb wrapped in layers of cellophane wrap to form a handle with a metal substance underneath the wrappings.
> Deputy Weeks and I confiscated the shank and placed it in B-pod Control. Deputy Weeks and I then brought the thirteen Detainees in from the yard back to A-Block. Deputy Weeks instructed Detainee McClain to remain in the hallway outside of A-Block while the remaining detainees entered A-Block. Deputy Weeks instructed Detainee McClain to pack his belongings and told him that we were taking him to A-Pod. Deputy Weeks and I accompanied Detainee McClain to the upper mezzanine in A-Block so he could pack his belongings. Deputy Weeks instructed all the Detainees, except for McClain to go downstairs. Detainee McClain finished packing his items, and Deputy Weeks walked Detainee McClain over to A-Pod. I then returned to B-Pod Control to resume my daily duties. There were no further incidents.

*Id.* at 16; *see also Defts' Ex.* A-1 at 20 (Deputy Partain's supplemental report).

Corporal Caudle completed an incident offense report in Case number 201500798. *Defts' Ex.* A-1 at 17-18. The offenses listed are aggravated assault and possession/use weapon by incarcerated. *Id.* at 17. The report states:

> On 3/24/15 at approximately 1234 while working in B-Pod, the detainees from A-Block were taken to the yard for yard call. Deputy Tanner Weeks #538 and Deputy Seth Partain #519 were patting them down looking for weapons. Deputy Partain patted down Detainee David Jones . . . and found a note in his pocket. The detainees were placed in the yard. The note read, "McClain HAS A SHANK! We had an altercation and he pulled it out. It's black w/ a white Handle. Told me he was gonna KILL ME! A nail cliper blade connection to a handle. For your safety and mine, im informing you."

> Deputies Weeks and Partain went into A-Block to look for the shank using a metal detecting wand. When they passed it over McClain's mat it vibrated, alerting to something metal inside the mat. Deputies Weeks and Partain looked inside and found a shank approximately 6 inches in length wrapped in saran wrap. Deputy Weeks seized the shank and took pictures with the B-pod Camera and turned it over to Cpl. Mulvaney to be placed into evidence.

*Id.* at 17-18. A probable cause preliminary report form containing Corporal Caudle's narrative was sent to the prosecuting attorney's office. *Id.* at 47-48.

On March 24, 2015, Deputy Weeks charged Plaintiff with a violation of Rule 09-2 possession/introduction of any gun, firearm, weapon, ammunition, knife, sharpened instrument, or unauthorized tool (incident number 2015 D0399). *Defts' Ex.* A at 27. The citation was signed by two supervisors, Corporal Caudle and Sergeant Behnia. *Id.* The Plaintiff refused to sign the citation. *Id.*

On March 25, 2015, Plaintiff was provided with a disciplinary notice by Corporal Alderson and pled not guilty. *Defts' Ex.* A-1 at 37. Plaintiff was also provided with a notice of hearing. *Id.* at 39. The hearing was to be held on April 1, 2015, at 8:30 a.m. *Id.* The notice advised the Plaintiff that he had the right to be present and to present evidence and witnesses. *Id.* Plaintiff was asked if he wanted an assistant appointed to help him on the hearing. *Id.* He indicated he did not. *Id.* Plaintiff did not complete the witness request form. *Id.* at 41.

On March 27, 2015, an alias arrest warrant and a motion for revocation of suspended sentence was filed for McClain. *Defts' Ex.* A-1 at 50-51. On March 29, 2015, Plaintiff submitted a grievance about the "fictitious criminal charges." *Id.* at 11. He stated he had been denied access to the kiosk from March 24 to March 26. *Id.* He believed there were multiple officers and deputies conspiring against him. *Id.* He also believed Deputy Weeks' report did not

support the charges against him. *Id.* He said all charges should be dismissed. *Id.* In response, he was told to go to court and let the Judge know he thought his charges were false. *Id.* He was told he had a court date of April 24 and the $200,000 bond covered all charges. *Id.*

On April 1, 2015, the disciplinary hearing was held. *Defts' Ex.* A-1 at 42-44, 46. The hearing was recorded on audio and video. *Defts' Ex.* 4. Plaintiff did not submit a detainee statement. *Defts' Ex.* A-1. at 43. Plaintiff requested witnesses at that time, but he had not completed the witness request form so it was noted that he declined to call witnesses. *Id.* at 43.

Plaintiff's statement at the hearing is summarized as follows: "Detainee McClain told me during the Hearing Deputy Weeks Report was inconsistent and the shank was described wrong in the report. McClain also told me the mat was newer to him and had probably had been in circulation for years." *Defts' Ex.* A-1 at 43.

The findings of the hearing officer are as follows:

While watching the video of the incident I observed Deputy Weeks find the Shank as Reported. The Shank was located in a mattress in the top left hand corner accessible by a small hole. Weeks also reported he became aware of the shank through a note that was given to him over an incident that happened earlier. I reviewed the camera footage of the incident and I observed on 03/23/2015 at approximately 2300 Detainee McClain lifted up is mattress and messed around with it for a moment or two then he gets out of his rack, and goes to the railing on the upper level. McClain begins to argue with another detainee who was downstairs and at one point he starts waving an object through the railing that appeared to be a shank, while continuing to talk to the detainee downstairs. After a Moment or two I observed McClain put the shank into his left sock and he goes downstairs and confronts the other detainee face to face. The two speak for a few minutes and I observed McClain lift up his pant leg as if showing the shank to the other detainee. After another moment McClain goes back to his rack and the incident ended. The information given to the Deputy Weeks is consistent with what I observed on camera. The rule violation of 09-2 is upheld. The shank was found in McClain's mattress which is the same as being in his possession. Further, what I observed on camera places the shank on McClain's person before the shank was found in his Mattress.

*Defts' Ex.* A-1 at 43-44; *see also Defts' Ex.* A-2 (video on 3/23/2015 incident). Plaintiff was given ten days in disciplinary segregation. *Defts' Ex.* A-1 at 44.

Plaintiff appealed. *Defts' Ex.* A-1 at 45. His statement of reasons for the reversal provides as follows:

> Deputy Weeks report is contradictory. It states that a nail cliper blade was the alleged shank allegedly reported seen and the hearing officer illegally found Mr. McClain guilty of an alleged comb and saran wrap. All mats are property of the WCDC no shank was found on Mr. McClain's person, and therefore all charges shall be dismissed.

*Id.*

On April 6, 2015, Lieutenant Sabrina Mason reviewed the disciplinary decision and affirmed it. *Defts' Ex.* A-1 at 45. Her stated reasons were:

> After review of the disciplinary file, not only was the shank found in McClain's mattress (which he is responsible for the contents of his cell), there is video footage of McClain in possession of the shank during an altercation with a detainee during a prior incident.

*Id.*

On April 15, 2015, McClain plead not guilty to the charges against him. *Defts' Ex.* A-1 at 63-64. On May 1, 2015, a post-arrest warrant was issued for the charges of possession of a weapon by incarcerated persons and terroristic threatening. *Id.* at 66. On May 6, 2015, McClain was found guilty of a violation of the terms of his probation and sentenced to a term of ten years. *Id.* A-1 at 68-71.

On May 18, 2015, Corporal Mulvaney spoke with David Jones on the phone about the charges filed against McClain. *Defts' Ex.* A-1 at 21. Jones said he wanted to pursue charges and would testify if necessary. *Id.* Jones stated he and McClain had "gotten into an argument and

while McClain was still upstairs McClain pulled the 'shank' out and was making like 'jabbing' motions and making threats that he would get him." *Id.* Corporal Mulvaney noted that the video of the incident supported Jones' story. *Id.*

On June 15, 2015, the remaining criminal charges against McClain, including the possession of a weapon by an incarcerated person and terroristic threatening, were dismissed because the state was satisfied with the ten year sentence and six year sentence imposed in CR-2011-212-1 and CR 2013-1606-1 respectively. *Defts' Ex.* A at 72-80.

## II. APPLICABLE STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).

The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a

court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  DISCUSSION

Defendants have moved for summary judgment on the following grounds: (1) Plaintiff was afforded his Due Process rights; (2) there was no Fourth Amendment violation; (3) there was no evidence of a conspiracy against Plaintiff; and, (4) there is no basis for official capacity liability.

#### A.  Section 1983

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983.  *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

#### B.  Disciplinary Charges, Criminal Charges, and Due Process

When "an inmate is deprived of privileges or placed in a special confinement status in order to punish him for past misconduct, due process requires some kind of hearing beforehand." *Jones v. Mabrey*, 723 F.2d 590, 594 (8th Cir. 1983).  "The Supreme Court has outlined the procedures correctional facilities must follow to conduct an impartial due process hearing on a disciplinary matter."  *Hartsfield v. Nichols*, 511 F.3d 826, 830 (8th Cir. 2008) (*citing Wolff v.*

*McDonnell*, 418 U.S. 539, 563-66 (1974)). These procedures include advance written notice of the charges, a brief period to prepare, a written statement of the evidence relied on and reasons for the disciplinary action, and the ability for the inmate to call witnesses and present documentary evidence. *Id.; see also Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

Plaintiff was provided with these procedures and had an opportunity to appeal the finding of guilt. He afforded himself of this opportunity. Due Process requires no more. Defendants are entitled to judgment in their favor on this claim.

Additionally, Defendants are entitled to summary judgment on Plaintiff's claims that he was being wrongfully prosecuted for a crime he did not commit. In *Baker v. McCollan*, 443 U.S. 137 (1979), the Supreme Court stated:

> The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released. Nor are the manifold procedural protections afforded criminal defendants under the Bill of Rights "without limits." *Patterson v. New York*, 432 U.S. 197, 208, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281 (1977). "Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person." *Ibid.*
>
> The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished "without due process of law." A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers-all of whom may be potential defendants in a § 1983 action-is entirely consistent with "due process of law." Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury

*Baker*, 443 U.S. at 145-46.

While Defendants may have referred the incident to the prosecutor, it is the prosecutor who makes the decision whether charges should be filed and what charges should be filed. Defendants are entitled to summary judgment on this claim.

### C. Fourth Amendment

Plaintiff testified that he did not have a shank in his possession. Furthermore, with respect to the shank allegedly found in his mattress, he contends a metal detector would not have alarmed on plastic. This argument is meritless because it is made clear in various reports that the shank had a metal blade - described as a nail clipper blade. *See e.g.,* Deputy Weeks' failure to note the metal component in his initial report does not change the composition of the actual shank which was taken into evidence.

To the extent Plaintiff claims the Defendants had no right to search his mattress, that claim is also meritless. The Fourth Amendment protects the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. U.S. Const. amend IV. For the Fourth Amendment to be implicated, a person must have a legitimate expectation of privacy. *Smith v. Maryland*, 442 U.S. 735, 740 (1979). "[G]iven the realities of institutional confinement any reasonable expectation of privacy that a detainee retained necessarily would be of a diminished scope." *Bell v. Wolfish*, 441 U.S. 520, 557 (1979).

In *Hudson v. Palmer*, 468 U.S. 517, 529-30 (1984), the Supreme Court held that prisoners have no legitimate expectation of privacy in their prison cell, and thus the Fourth Amendment proscription against unreasonable searches does not apply to prison cells. Accordingly, Plaintiff has no expectation of privacy and no warrant is required for the

Defendants to search Plaintiff's belongings or confiscate the same. Defendants are entitled to summary judgment on the Fourth Amendment claim.

### D. Supervisory and Official Capacity Liability

Plaintiff's claims against Sergeant Behnia, Corporal Caudle, and Corporal Mulvaney, are based on their having signed off on various documents as supervisors. To establish personal liability of a supervisory defendant, a plaintiff must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights. *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (*quoting Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)); *Keeper v. King*, 130 F.3d at 1314 (no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993) (section 1983 liability requires some personal involvement or responsibility). No such showing has been made here.

A Plaintiff "seeking to impose liability on a municipality under § 1983 [must] identify a municipal policy or custom that caused the plaintiff's injury." *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997). "There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." *Moyle v. Anderson*, 571 F.3d 814, 817-18 (8th Cir. 2009) (citation omitted). Plaintiff has not pointed to "any officially accepted guiding principle or

AO72A
(Rev. 8/82)

procedure that was constitutionally inadequate." *Jenkins v. County of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009).

"[A] custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct." *Id*. at 634 (internal quotation marks and citation omitted). There is no genuine issue of material fact as to whether there is any widespread, persistent pattern of unconstitutional conduct with respect to the procedures used to search for the shank, charge the Plaintiff with a disciplinary violation, or refer the matter to the prosecutor for review.

Defendants are entitled to summary judgment on these claims.

## IV. CONCLUSION

For the reasons stated above, I recommend that Defendants' Motion for Summary Judgment (Doc. 23) be **GRANTED and this case DISMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of July, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE